IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA


| | |
|---|---|
| ALFONZA SIMMONS, | ) Civil Action No. 3:10-908-HMH-JRM |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) **REPORT AND RECOMMENDATION** |
| OFFICER CRAIG SMITH, | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |
| _____ | ) |


Plaintiff, Alfonza Simmons, filed this action on April 13, 2010.[1]  At the time he filed this

action, he was represented by counsel.  Plaintiff alleges violations of his constitutional rights

pursuant to 42 U.S.C. § 1983 ("§ 1983") and also alleges state law claims under South Carolina law.

Defendant is Officer Craig Smith, a deputy with the Hampton County Sheriff's Department.

Defendant filed a motion for summary judgment on November 8, 2011.  A hearing was held before

the undersigned on April 23, 2012, at which time it was clarified that Plaintiff is proceeding pro se.[2]

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the
provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02 (B)(2) DSC.  Because
this is a dispositive motion, the report and recommendation is entered for review by the court.

[2]At the time he filed this action, Plaintiff was represented by William Gary White, III
("White").  On March 10, 2011, attorney Ian McVey ("McVey") was appointed by the Supreme
Court of South Carolina to protect the interests of White's clients as White was placed under a
ninety-day suspension.  Doc. 23.  McVey filed a motion to stay this action, which was granted.  See
(continued...)

At the hearing, Plaintiff was given written notice (Doc. 50) and advised, pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendant's motion for summary judgment could result in the dismissal of his complaint. Plaintiff filed a response in opposition to Defendant's motion for summary judgment on May 25, 2012.

## STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>see</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. <u>Shealy v. Winston</u>, 929 F.2d 1009, 1011 (4th Cir. 1991). The moving party "bears the initial burden of pointing to the absence of a genuine issue of material fact." <u>Temkin v. Frederick County Comm'rs</u>, 945 F.2d 716, 718 (4th Cir. 1991)(citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986)) If the moving party carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." <u>Id.</u> at 718-19 (citing <u>Anderson</u>, 477 U.S. at 247-48).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 248. While the federal court is charged with liberally construing a complaint filed by a <u>pro</u> <u>se</u> litigant to allow the

_____

[2](...continued)

Docs. 25, 26. A hearing was held before the undersigned on May 20, 2011, at which time the stay was lifted and it was noted that Plaintiff was proceeding <u>pro</u> <u>se</u>. <u>See</u> Doc. 32. On August 24, 2011, the Supreme Court of South Carolina terminated the appointment of McVey. <u>See</u> Doc. 37.

development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## DISCUSSION

In his Complaint, Plaintiff claims that on January 26, 2009, he was at home with his adult daughter, Renee Sanders ("Sanders"). Sanders allegedly gave her father some money, asked for it back, and when Plaintiff refused to do so, she called the police. Defendant came to Plaintiff's home in response to the call. Plaintiff claims that, "rather than letting Plaintiff and daughter work out their misunderstanding, [Defendant] took advantage of the occasion to get back at Plaintiff, falsely charging him with larceny and assault, misdemeanors which had not occurred in Defendant's presence and had not occurred at all." Plaintiff claims he was arrested without a warrant and without probable cause. He also claims that on March 5, 2009, "Defendant falsely prosecuted Plaintiff wherein Plaintiff was found not guilty by a jury." Complaint, Paras. 5-10.

In his memorandum in opposition to summary judgment, Plaintiff claims that he was lying in bed around 8:30 p.m. on January 16, 2009,[3] when Sanders entered and began to curse him saying she did not think he deserved the $300 she had given him earlier that night  She went to the kitchen and cursed him in a threatening manner, he followed her, and she picked up a knife and approached him. Plaintiff states that he and Sanders had a "little scuffle" and he took the knife away from her.

---

[3]The incident appears to have occurred on January 16, not 26, 2009. See, e.g., Defendant's Aff., Ex. A (Incident Report), D (Uniform Traffic Tickets), and F (Booking Report).

3

He states that he got himself together, left his home to cool off, and called the "law" to report what happened. Plaintiff claims that Defendant called back and said he was on his way to Plaintiff's house. Plaintiff asserts that before he reached his home, Defendant saw him and placed him under arrest. Plaintiff claims that Sanders was disrespectful and disobedient, used illegal drugs in the past, and committed violent acts in the past. Additionally, Plaintiff claims that Sanders "eventually" apologized for pulling a knife on him and for saying he took her money. Plaintiff's Opp. Mem.

Plaintiff alleges that: (1) his Fourth and Fourteenth Amendment rights were violated because Defendant seized him without probable cause; (2) Defendant falsely arrested him; (3) he was maliciously prosecuted; (4) Defendant's actions constituted battery; (5) Defendant violated his rights under the First and Fourteenth Amendment as to his right to free speech and his right to criticize Defendant; and (6) Defendant's action constituted abuse of process. Defendant contends that his motion for summary judgment should be granted because: (1) he is entitled to Eleventh Amendment immunity; (2) he had probable cause to arrest Plaintiff; (3) the minimal force used to arrest Plaintiff was justified; (4) no First Amendment right of Plaintiff was violated; (5) he is entitled to qualified immunity; (6) he is entitled to summary judgment as to all state law claims in that he is a state officer and is not a proper party to any cause of action brought under the South Carolina Tort Claims Act ("SCTCA"), S.C. Code Ann. §§ 15-78-10, et seq. ; (7) there is no indication that he acted outside the scope of the common law privilege to use the force necessary to take an arrestee into custody, such that Plaintiff's battery claim fails; (8) he is entitled to summary judgment as to any South Carolina false arrest/false imprisonment claim because the arrest of Plaintiff was valid on several grounds; (9) any claim for malicious prosecution under South Carolina law fails because Plaintiff has not shown

malice or a want of probable cause; and (10) Plaintiff fails to establish the required elements of a claim for abuse of process.

I.  Claims Under § 1983

Plaintiff asserts claims, pursuant to § 1983, that his constitutional rights were violated, as discussed below.

A.  False Arrest/Imprisonment

Plaintiff appears to allege that his Fourth and Fourteenth Amendment rights were violated because he was seized without probable cause and Defendant falsely arrested him. Defendant argues that Plaintiff fails to show that his constitutional rights were violated because he had probable cause to arrest Plaintiff.

Section 1983 actions premised on alleged false arrest and/or false imprisonment claims are analyzed as unreasonable seizures under the Fourth Amendment. See, e.g., Brown v. Gilmore, 278 F.3d 362, 367 (4th Cir. 2002)(recognizing that a plaintiff alleging a § 1983 false arrest claim needs to show that the officer decided to arrest him without probable cause to establish an unreasonable seizure under the Fourth Amendment); Rogers v. Pendleton, 249 F.3d 279, 294 (4th Cir. 2001)(claims of false arrest and false imprisonment "are essentially claims alleging a seizure of the person in violation of the Fourth Amendment").

"The Fourth Amendment is not violated by an arrest based on probable cause." Graham v. Connor, 490 U.S. 386, 396 (1989). A warrantless arrest is valid if the arresting officer has probable cause to believe the suspect has committed an offense, and the officer's decision that probable cause is present is reviewed under a totality of the circumstances test. See Illinois v. Gates, 462 U.S. 213, 238 (1983). Probable cause exists when the facts and circumstances within an officer's knowledge

are "sufficient to warrant a prudent man in believing that the [individual] had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964). While probable cause demands "more than a mere suspicion, ... evidence sufficient to convict is not required." Taylor v. Waters, 81 F.3d 429, 434 (4th Cir. 1996)(citing Wong Sun v. United States, 371 U.S. 471, 479 (1963)). Reasonable law officers need not "resolve every doubt about a suspect's guilt before probable cause is established." Torchinsky v. Siwinski, 942 F.2d 257, 264 (4th Cir. 1991)(citation omitted).

In his affidavit, Defendant presents the information which led him to arrest Plaintiff. Defendant states that he was on routine patrol with his partner Deputy Teddy Scott on January 16, 2009. They were dispatched to a domestic call by radio after a 911 call reporting an assault. They responded to a call at Ruth Street in Estill, South Carolina. Upon arrival at the residence, the deputies were met by Sanders who was the adult complainant. Deputy Scott and Defendant walked up to the door where Sanders was standing in the doorway holding her baby. They walked into the house, and Defendant asked what happened. Sanders reported she had just been assaulted by her father, the Plaintiff in this action. Defendant states he noticed signs of a tussle with stuff thrown around the floor. He also observed injures to Sanders, including that her finger was bleeding, her eye was swollen with a black ring of bruising apparent at the bottom of her eye, the right side of her head had a swollen knot, and a small clump of hair appeared to have been pulled out of her scalp. Sanders stated that her father (Plaintiff), demanded money from her that she obtained in a settlement. When she refused to give him money, Plaintiff jumped on Sanders while her baby was in her arms and assaulted her by pulling her hair and punching her in her face. She stated that Plaintiff stole around $300 cash from her. Defendant Aff., Para. 2.

Defendant took pictures to document Sanders' injuries. These pictures appear to show injuries to Plaintiff's hand, eye, and head. Defendant Aff., Ex. C.

Sanders provided a voluntary handwritten statement. In it, she stated that her father (Plaintiff) attacked her with her newborn daughter in her arms. Sanders wrote that she picked up a check in Columbia, South Carolina from a legal settlement. Upon returning home, she claims her father demanded $500, and she told him that his request was unreasonable. Sanders wrote that Plaintiff became upset, started cursing her, and "jumped" on her. She called her mother and the police. Sanders wrote that her father took $300 of her money from her person and left on his bike. Defendant's Aff., Ex. B (Voluntary Statement from Sanders).

Defendant states that Sanders related she was afraid that Plaintiff would attack her on his return in retaliation for her calling the police. He told Sanders that he and Deputy Scott would patrol the neighborhood. Defendant states that they (he and Deputy Scott) left and rode around the area, but within minutes got a call from dispatch to go back to the residence because Plaintiff had returned. He states that Plaintiff was standing in the driveway and came over to the police car. Defendant states that Plaintiff had no sign of injury and reported no injury. He asked Plaintiff what happened and how Plaintiff's daughter received injuries. Plaintiff, according to Defendant, stated "I was disciplining my daughter as she was acting up and her eye got swollen up." Defendant told Plaintiff that his daughter was in her twenties with a child of her own and was a grown woman that Plaintiff could not discipline. Defendant's Aff., Para. 4-5.

Defendant asked Plaintiff if he took Sanders' money to which Plaintiff replied that he had $300 in his pocket and Sanders was not getting it back. Defendant explained that Plaintiff's actions constituted an assault. Defendant reports that Plaintiff insisted that Sanders would be punished if she

did not do as she was told, and asserts that Plaintiff was loud, irrational, and aggressive. Based on the statement of the victim (Sanders), Plaintiff's own admissions, the evidence observed by Defendant, and Plaintiff's insistence that he would continue to apply discipline, Defendant placed Plaintiff under arrest and charged Plaintiff with assault and battery and petit larceny. Defendant Aff., Para. 6.

Defendant issued Uniform Traffic Tickets to Plaintiff for assault and battery and for petit larceny. Defendant's Aff., Ex. D and E. Plaintiff was taken to the Hampton County Detention Center and booked. Defendant's Aff., Para. 7.

Defendant states that when the case went to trial, he took a subpoena to Sanders, who stated that she was afraid to come to court, and she did not come to court. He states that after the jury returned a "not guilty" verdict and the case was over, he was approached by a juror who stated he needed to talk to Defendant about the decision. Defendant reports that the juror stated that Defendant did a good job presenting the case, but the jury found the father (Plaintiff) not guilty because the daughter (Sanders) did not come to court. Defendant's Aff., Para. 9.

Defendant submitted an affidavit from Lieutenant Colonel William McNeil Baxley, Jr. ("Baxley"), the Deputy Chief of Staff for the Beaufort County Sheriff's Office.[4] Baxley reviewed the evidence in this case and he opined that under South Carolina law, Defendant was properly trained, and acted properly and within accepted practices of law enforcement in South Carolina as well as within the training and policies and procedures of the Hampton County Sheriff's Department. Baxley Aff.

---

[4]Defendant's counsel retained Baxley as an expert witness.

8

Here, the facts and circumstances within the knowledge of Defendant were sufficient to warrant a prudent man to believe that Plaintiff committed or was committing an offense. Defendant could see physical injuries to Sanders including that her fingers were bleeding from lacerations, her eye was swollen and bruised, and hair was missing from her scalp where it had been pulled out in a clump. Defendant was not required to get a warrant before arresting Plaintiff as the facts and circumstances observed by Defendant gave him probable cause to believe that a crime has been "freshly committed." See S.C.Code Ann. § 23-13-60; State v. Martin, 268 S.E.2d 105, 107 (S.C.1980). Sanders stated that Plaintiff had done these things to her. Sanders provided a written statement detailing the incident. She also alleged that Plaintiff took $300 from her and refused to give it back. Sanders also placed this allegation in her written statement. Defendant provides that Defendant admitted he took the money from Sanders and he "disciplined" his adult daughter resulting in her swollen and bruised eye. Additionally, Sanders related that she was worried Plaintiff would attack her in retaliation for calling the police.

  B. <u>Malicious Prosecution</u>

    Plaintiff alleges that Defendant caused Plaintiff to be prosecuted (for the crimes of assault and battery and petit larceny) maliciously and without probable cause. To prevail on a Fourth Amendment malicious prosecution claim under § 1983, a plaintiff must show that: (1) the defendant initiated or maintained a criminal proceeding; (2) the criminal proceeding terminated in the plaintiff's favor; (3) the proceeding was not supported by probable cause; and (4) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. See Lambert v. Williams, 223 F.3d 257, 260-262 (4th Cir. 2000)(observing that a "malicious prosecution" claim under § 1983 is properly understood as a Fourth Amendment claim

for unreasonable seizure which incorporates the common law malicious prosecution tort elements except for malice); see also Brooks v. City of Winston-Salem, 85 F.3d 178, 183-184 (4th Cir. 1996). Here, Plaintiff's malicious prosecution claim fails because he has not shown a lack of probable cause, as discussed above.

<blockquote>C.    Excessive Force</blockquote>

In his motion for summary judgment, Defendant contends that Plaintiff fails to show that excessive force was used against him in violation of his constitutional rights because the only act alleged was that of handcuffing Plaintiff in the course of taking him into custody which does not constitute excessive force because Plaintiff did not allege any injury from such, Plaintiff fails to demonstrate even a de minimis injury, and Defendant used the least amount of force he could in handcuffing Plaintiff following his arrest. In his Complaint, Plaintiff (represented by counsel at the time) alleged a claim for battery, but did not allege a claim for excessive force. Plaintiff has not amended his complaint to add such a claim. Further, he does not specifically address any claim for excessive force in his memorandum in opposition to summary judgment.

Even if a claim for excessive force is properly before the Court, Plaintiff fails to show a violation of his constitutional rights. The Supreme Court has held that excessive force claims against law enforcement officers during the course of an arrest should be analyzed under the Fourth Amendment objective reasonableness standard. Scott v. Harris, 550 U.S. 372, 381(2007); Graham v. Connor, 490 U.S. 386, 395 (1989). Thus, courts determine "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 397 (1989). Reasonableness analysis requires "careful attention to the facts and circumstances of each particular

case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396. In considering whether an officer used reasonable force, a court must focus on the moment that the force is employed. Elliott v. Leavitt, 99 F.3d 640, 643 (4th Cir. 1996). At the summary judgment stage, once the evidence has been viewed in the light most favorable to the nonmovant, the question of whether the officer's actions were reasonable is a question of pure law. Scott, 550 U.S. at 381 n. 8.

Viewing the facts in the light most favorable to Plaintiff does not support the conclusion that the force used against Plaintiff amounted to excessive force. Here, the only alleged excessive force appears to have been the "grabbing" of Plaintiff to handcuff him. A certain amount of physical coercion or threat thereof is necessary to place an arrestee in handcuffs. See, e.g., Crumley v. St. Paul, 324 F.3d 1003, 1007 (8th Cir. 2003) (noting that the right to make an arrest or stop necessarily encompasses the right to use some degree of force to effect it). Plaintiff has not alleged any physical injury as a result of Defendant's actions. For the purposes of an excessive force claim, the nature of the intrusion is measured by the amount of force employed and, accordingly, "[t]he extent of the plaintiff's injuries is also a relevant consideration." Brockington v. Boykins, 637 F.3d 503, 506 (4th Cir. 2011)(internal quotation marks omitted). Further, Defendant observed fresh injuries to Sanders and Sanders related that she was afraid Plaintiff would retaliate against her (for calling the police) such that there was a perceived threat to the safety of Sanders.

D.     First Amendment/Retaliation

Plaintiff alleges that Defendant violated his rights under the First and Fourteenth Amendments to the Constitution as to free speech and the right to criticize Defendant.

He claims he was punished for his speech and criticism of Defendant. Complaint, Para. 22. Defendant argues that Plaintiff fails to establish a constitutional claim because Plaintiff made no allegations of fact in his Complaint, nor is there anything in the record, to show that he made any comments against Defendant. Additionally, Defendant asserts that all of Plaintiff's actions and statements which led to his arrest for assault and petit larceny were acts against and spoken threats made to his daughter. Defendant argues that if Plaintiff is claiming these statements against Sanders are protected by the First Amendment, it is clear that an exception to Plaintiff's right to express himself under the First Amendment is the "fighting words" exception.

To establish a First Amendment § 1983 retaliation claim, a plaintiff must show that: (1) the plaintiff's right to speak was protected; (2) the defendant's alleged retaliatory action adversely affected the plaintiff's constitutionally protected speech; and (3) a causal relationship existed between the plaintiff's speech and the defendant's retaliatory action. <u>Suarez Corp. Indus. v. McGraw</u>, 202 F.3d 676, 685–86 (4th Cir. 2000).

Plaintiff has not shown a causal connection between his arrest and any speech by him concerning Defendant. He has not specified what speech or criticism Plaintiff made of Defendant. Bare assertions of retaliation do not establish a claim of constitutional dimension. <u>Adams v. Rice</u>, 40 F.3d 72, 74 (4th Cir. 1994). To the extent that he is alleging that Defendant arrested him based on his filing of a previous lawsuit against Defendant, such a claim fails as the lawsuit (<u>Simmons v.</u>

<u>Smith</u>, 09-1176-HMH)[5] was not filed (on May 4, 2009) until approximately five months after the incident complained of in this action (January 19, 2009).

        E.     <u>Emotional Injuries</u>

Plaintiff alleges that he suffered emotional injuries as a result of Defendant's actions. To the extent that Plaintiff is asserting a claim under § 1983 for emotional injuries, his claims fail. There is no federal constitutional right to be free from emotional distress, psychological stress, or mental anguish, and, hence, there is no liability under § 1983 regarding such claims. <u>See</u> <u>Grandstaff v. City of Borger</u>, 767 F.2d 161 (5th Cir. 1985), <u>cert.</u> <u>denied</u>, 480 U.S. 916 (1987); <u>Rodriguez v. Comas</u>, 888 F.2d 899, 903 (1st Cir. 1989). The PLRA provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury.[6]

42 U.S.C. § 1997e(e).

---

[5]The Court may take judicial notice of Plaintiff's prior lawsuits filed in this Court. <u>See</u> <u>Aloe Creme Labs., Inc. v. Francine Co.</u>, 425 F.2d 1295, 1296 (5th Cir. 1970)(noting that the District Court clearly had the right to take notice of its own files and records and it had no duty to grind the same corn a second time); <u>see also</u> <u>Colonial Penn Ins. Co. v. Coil</u>, 887 F.2d 1236, 1239 (4th Cir. 1989)("We note that 'the most frequent use of judicial notice is in noticing the content of court records.'").

[6]The PLRA does not define "physical injury" and the Fourth Circuit has not ruled on the issue, but the Fifth Circuit held that "physical injury" must be more than de minimis, but need not be significant. <u>Siglar v. Hightower</u>, 112 F.3d 191 (5th Cir. 1997)(concluding that a sore, bruised ear lasting for three days was de minimis and failed to meet the requisite physical injury to support a claim of emotional or mental suffering); <u>see also</u> <u>Zehner v. Trigg</u>, 952 F. Supp. 1318 (S.D. Ind. 1997)(exposure to asbestos not physical injury necessary to support claim for mental or emotional injury under the PLRA), <u>aff'd</u>, 133 F.3d 459 (7th Cir. 1997).

F.    Eleventh Amendment Immunity

Defendant argues that, as a state officer, he is entitled to Eleventh Amendment immunity.  When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest.  If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution.  Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state.  In the case of <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties.  The Eleventh Amendment bars such suits unless the State has waived its immunity [cites omitted] or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

<u>Id.</u> at 66.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments, and officials are entitled to the Eleventh Amendment immunity.  <u>Id.</u> at 70.  In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself and, therefore, against the state.  State officials may only be sued in their individual capacities.

In <u>Gulledge v. Smart</u>, 691 F. Supp. 947 (D.S.C. 1988), <u>aff'd</u> <u>mem.</u>, 878 F.2d 379 (4th Cir. 1989)[Table], the court addressed whether South Carolina sheriffs were state or county officials.  The court applied South Carolina common law principles of the master and servant relationship and

concluded that sheriffs are state officials. Id. at 954-955. The Fourth Circuit concluded, in Cromer v. Brown, 88 F.3d 1315 (4th Cir. 1996), that the Greenville County sheriff, in his capacity as a state official, was immune from suit for monetary damages under § 1983. Id. at 1332. Further, in Gulledge, the district court concluded that deputy sheriffs are agents of the sheriff and therefore under state, not county, control. Gulledge, supra; see also Heath v. Aiken County, 368 S.E.2d 904 (S.C. 1988). In Cone v. Nettles, 417 S.E.2d 523 (S.C. 1992), the South Carolina Supreme Court cited Gulledge with approval and specifically held that South Carolina sheriffs and their deputies are state officials for § 1983 purposes. Thus, Defendant is entitled to Eleventh Amendment immunity from monetary damages in his official capacity.

G.  Qualified Immunity

Defendant argues that he is entitled to qualified immunity in that all acts taken by him were within the scope of his official duties, he had no knowledge that the acts were illegal and/or unconstitutional, and these acts were not clearly violative of Plaintiff's rights at the time they were taken in that Defendant was operating in good faith and under the belief that the charges made were necessary and mandated by the facts presented to him.

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Id. at 818.

The Court of Appeals for the Fourth Circuit, discussing qualified immunity, stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, Plaintiff has failed to show that Defendant violated any of his clearly established constitutional or statutory rights. Therefore, Defendant is entitled to qualified immunity in his individual capacity.

## II. State Law Claims

Plaintiff alleges claims under South Carolina law for battery and abuse of process. He may also be alleging claims for false arrest/false imprisonment and malicious prosecution under South Carolina law. Defendant contends that he is entitled to summary judgment as to Plaintiff's state law claims because he is immune from liability pursuant to the SCTCA. Defendant argues that even if these claims are not barred, Plaintiff fails to establish such claims.[7]

### A. SCTCA

Defendant argues that he is entitled to employee immunity under the SCTCA (S.C. Code Ann. § 15-78-70(a) and (b)) because Plaintiff has made no allegations that Defendant was

---

[7]The undersigned recommends that summary judgment be granted to Defendant as to Plaintiff's state law claims for the reasons discussed below. Alternatively, as Plaintiff fails to show that Defendant violated his rights under § 1983 (as discussed above), it is recommended, pursuant to 28 U.S.C. § 1367(c)(3), that any state law claims be dismissed.

acting outside the course and scope of his official duties and because none of the exceptions set forth in § 15-78-70(b)(that the alleged acts or omissions constitute actual fraud, malice, intent to harm, or a crime involving moral turpitude) are applicable. Plaintiff, in his opposition to summary judgment, has not addressed these arguments.

The SCTCA constitutes the exclusive remedy for torts committed by a government employee acting within the scope of his official duties. S.C. Code Ann. § 15-78-70(a). In such a case, the agency or political subdivision for which the employee was acting is the proper party defendant. S.C. Code Ann. § 15-78-70(c). Under the SCTCA, an employee of a governmental entity who commits a tort while acting within the scope of his official duty is immune from liability for that tort; however, an employee is not entitled to immunity if it is proven that the employee's conduct was not within the scope of his official duties or if it constituted "actual malice" or "intent to harm." See S.C. Code Ann. § 15-78-70(b).

Here, Plaintiff has not shown that Defendant was acting outside the course and scope of his official duties, nor has he shown that Defendant's actions constituted malice or intent to harm. Plaintiff fails to show malice as he has not shown lack of probable cause to arrest or prosecute him. Nor has Plaintiff shown any intent to harm him as to Defendant's actions in arresting him. Thus, Defendant is entitled to immunity under the SCTCA.

B.    Battery

Plaintiff claims that Defendant "in a rude and insolent manner" grabbed him and that as a result he suffered physical discomfort, extreme emotional distress and anguish, physical pain, public humiliation and embarrassment, damage to his reputation and standing in the community, and other damages. Defendant contends that an officer has a common law privilege to

use the force necessary to take an arrestee into custody. He asserts that there is no question of fact from the record that he acted outside the scope of privilege, and therefore he is entitled to summary judgment as a matter of law.

Under South Carolina law, "battery is the actual infliction of any unlawful, unauthorized violence on the person of another, irrespective of its degree; it is unnecessary that the contact be by blow, as any forcible contact is sufficient." Gathers v. Harris Teeter Supermarket, Inc., 317 S.E.2d 748, 754 (S.C.App. 1984). A police officer who uses reasonable force in effectuating a lawful arrest is not liable for battery. Roberts v. City of Forest Acres, 902 F.Supp. 662, 671-72 (D.S.C. 1995). However, if a law enforcement officer uses force greater than is reasonably necessary under the circumstances, he may be liable for battery. Id. at 671 n. 2.

Here, Plaintiff merely alleges that Defendant grabbed him in a "rude and insolent" manner. At most, Plaintiff has shown that Defendant used a minimal amount of force to place Plaintiff in handcuffs in effectuating Plaintiff's arrest. Plaintiff fails to show that a force greater than was reasonably necessary under the circumstances was used. Thus, Plaintiff fails to show that Defendant's actions constituted battery under South Carolina law.

C.    False Arrest/False Imprisonment

Plaintiff may also be attempting to bring a claim for false arrest/false imprisonment under South Carolina law. Defendant contends that he had sufficient basis to have reasonable suspicion that Plaintiff committed crimes, including that Plaintiff made admissions to him that established the elements of the charges for which Plaintiff arrested, and Plaintiff was acting in a manner that gave Defendant reason to believe Plaintiff might further harm his daughter in violation of the law against assault.

To prevail on a claim for false arrest or imprisonment, Plaintiff must prove "both that he was deprived of his liberty and that the deprivation was done without lawful justification." <u>Hill v. Gould</u>, No. C.A. 30423388MBS, 2005 WL 3134066, at *3 (D.S.C. Nov. 23, 2005)(citing <u>Jones v. City of Columbia</u>, 389 S.E.2d 662 (S.C. 1990)). "An action for false imprisonment may not be maintained where the plaintiff was arrested by lawful authority." <u>Gist v. Berkeley County Sheriff's Dep't</u>, 521 S.E.2d 163, 165 (S.C.Ct. App. 1999); <u>see also</u> <u>Watkins v. Mobil Oil Corp.</u>, 313 S.E.2d 641 (S.C.Ct. App. 1984). "The fundamental issue in determining lawfulness is whether there was probable cause to make the arrest. Probable cause is defined as a good faith belief that a person is guilty of a crime when this belief rests upon such grounds as would induce an ordinarily prudent and cautious person, under the circumstances, to believe likewise." <u>Gist</u>, 521 at 165 (citations omitted). As discussed above, Defendant had probable cause to arrest Plaintiff.

        D.    <u>Malicious Prosecution</u>

Plaintiff also may be asserting a claim for malicious prosecution under South Carolina law. Defendant contends that Plaintiff has not shown the existence of malice or a want of probable cause.

Under South Carolina law, the elements of malicious prosecution are:

(1) the institution or continuation of original judicial proceedings, either civil or criminal;
(2) by, or at the instance of the defendants;
(3) termination of such proceedings in plaintiff's favor;
(4) malice in institution of such proceedings;
(5) want of probable cause; and,
(6) resulting injury or damage.

<u>Jordan v. Deese</u>, 452 S.E.2d 838, 879 (S.C. 1995)(citing <u>Gaar v. North Myrtle Beach Realty Co., Inc.</u>, 339 S.E.2d 887, 889 (S.C. Ct. App. 1986)). As discussed above, Plaintiff has not shown want of probable cause.

E.    Abyse of Process

Plaintiff alleges that Defendant caused process to be issued and pursued against him, "not for the purposes intended[,] but for ulterior purposes, including punishing and so discouraging Plaintiff from complaining against the Defendant."  Complaint, Para. 25.  Defendant contends that Plaintiff fails to establish a claim for abuse of process because he has not shown that an ulterior purpose existed or that the alleged collateral objective was the sole or paramount reason for Defendant's actions.

Under South Carolina law, "[t]he essential elements of abuse of process are:  (1) an ulterior purpose; and (2) a willful act in the use of the process not proper in the regular conduct of the proceeding."  Johnson v. Painter, 307 S.E.2d 860 (S.C. 1983). "The improper purpose usually takes the form of coercion to obtain a collateral advantage[ ] not properly involved in the proceeding itself." Hainer v. American Med. Int'l, Inc., 492 S.E.2d 103, 107 (S.C. 1997).  In order to satisfy the requirement of an improper act, the plaintiff must show that the defendant made "[s]ome definite act or threat not authorized by the process or aimed at an object not legitimate in the use of the process.... There is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions."  Id.

Here, Plaintiff's claim fails because he has not shown an ulterior purpose by Defendant.  An ulterior purpose exists if process is used to gain an objective which is not legitimate in the use of process.  Davis v. Epting, 454 S.E.2d 325 (S.C. Ct. App. 1994).   No liability exists "where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." Hainer v. Am. Med. Int'l, Inc., 492 S.E.2d 103, 107 (S.C. 1997).  Additionally,

Plaintiff has not shown that Defendant performed a willful act in the use of the process which was not proper in the regular conduct of the proceeding.

## **CONCLUSION**

Based on review of the record, it is recommended that Defendant's motion for summary judgment (Doc. 44) be **granted**.

Joseph R. McCrorey
United States Magistrate Judge

June 29, 2012
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).